Donald F. NOBLES et al., Petitioners,

v.

Charles MARCUS et al., Respondents.

No. B–5441.

Supreme Court of Texas.

Feb. 25, 1976.

$60,228.31 for unpaid attorneys' fees plus $20,000 in collection costs. Seeking to enforce that judgment lien against property that Macoa had previously conveyed to other defendants in the present cause, the plaintiffs filed this action. Based on affidavits and depositions the trial court rendered a take-nothing summary judgment against the plaintiffs. The court of civil appeals affirmed, holding that the plaintiffs had failed to plead all of the elements necessary to establish a cause of action for fraudulent conveyance. Tex.Civ.App., 524 S.W.2d 367. We affirm the judgments of the courts below.

Macoa, Inc., a corporation, owned property in Dallas, Texas known as the Alpha-Welch Warehouse. On September 8, 1971 Charles Marcus, purporting to act as Vice-President of Macoa, executed a warranty deed conveying the warehouse to Robert S. Folsom, Claude R. McClennahan, Jr., and David M. Sherer. The sale of the Alpha-Welch Warehouse was closed on September 14, 1971 at the Hexter-Fair Title Company which provided the title insurance policy for the transaction. At the closing, a certificate that alleged to be a copy of the minutes of a directors meeting of Macoa, Inc. was presented to Hexter-Fair. This certificate was purportedly signed and sworn to by the Assistant Secretary of the corporation and was presented to Hexter-Fair as evidence that Marcus was Vice-President of Macoa, Inc., and that the board of directors had authorized him to 'sign the conveyance. Based upon this certificate Hexter-Fair issued its title policy to the purchasers, defendants Folsom, McClennahan and Sherer.

In October 1972 a suit was filed against Macoa, Inc., by the plaintiffs in this cause, to recover for personal services rendered. Upon Macoa's failure to answer in that suit a default judgment was rendered for the plaintiffs in excess of $80,000. Seeking to affix a judgment lien the plaintiffs filed this action in January of 1973 against Marcus, Folsom, McClennahan, Sherer, Hexter-

Davis & Davis, Fred E. Davis, Austin, for petitioners.

Wynne, Jaffe & Tinsley, Morris I. Jaffe and James S. Pleasant, Green, Gilmore, Crutcher, Rothpletz & Burke, John Plath Green, Geary, Brice, Barron & Stahl, Joseph W. Geary, Dallas, for respondents.

DENTON, Justice.

Donald F. Nobles and Dean Davis brought this suit to set aside a deed and to foreclose a judgment lien. The plaintiffs had obtained a default judgment against defendant Macoa, Inc. in the amount of

Fair Title and others. The purpose of the instant suit was to set aside the deed executed by Marcus because of alleged forgery and fraud in connection with the conveyance of the Alpha-Welch Warehouse. The plaintiffs did not, however, plead or ask for relief because of a fraudulent conveyance.

The trial court granted the defendants' motion for a summary judgment. The plaintiffs appealed to the court of civil appeals and contended that the deed was a forgery as a matter of law and that material questions of fact existed as to Marcus' lack of authority and as to whether the deed had been ratified by the corporation. The court of civil appeals held that the plaintiffs had no standing to bring the present suit because there had been neither pleadings nor proof that there had been a fraudulent conveyance that was a fraud upon them. Therefore, the court of civil appeals never reached the questions of forgery, authorization or ratification.

The court of civil appeals erred in basing its opinion on cases grounded on fraudulent conveyances. A fraudulent conveyance is a transfer made by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditors' reach. Fraudulent conveyance requires a technical pleading that relies on specific allegations, including one that alleges the transfer to have been a fraud against the rights of the creditors; it is in addition to, and separate from, an action for fraud. Tex.Bus.Comm.Code Ann. § 24.02. The law is well settled in Texas that if a creditor pleads such conveyance that he may maintain an action "to vacate a fraudulant conveyance of his debtor's land." *Eckert v. Wendel,* 120 Tex. 618, 40 S.W.2d 796, 797 (1931). The plaintiffs here, however, have not pleaded that they were entitled to relief because of a fraudulent conveyance wherein they were the defrauded party; rather their pleading was based upon an alleged fraud committed against Macoa. Therefore it was error for the

court of civil appeals to hold that the plaintiffs lacked standing for not pleading that the conveyance was fraudulent as to them as is required for a fraudulent conveyance action when fraudulent conveyance was not in issue.

Nobles and Dean contend before us that the conveyance executed by Marcus was a forgery and therefore was void as a matter of law. The claim is that Marcus' signature as Vice-President of Macoa, when he was not in fact an officer of that corporation, amounted to a forgery of the deed. The evidence shows that there is some dispute over whether Marcus' action was later ratified by Macoa. There is, however, no doubt that at the time Marcus executed the deed that he had not been properly elected to the position of vice-president or properly authorized to make such a conveyance. Marcus was orally authorized by Lionel O. Birkeland, President of Macoa, to sign the conveyance as vice-president. Marcus was not, however, duly elected to that position by the Macoa Board of Directors as required by the corporate bylaws. In addition, the corporate resolution presented to Hexter-Fair to prove that Marcus had authority to make the conveyance was not the result of a board of directors meeting as it was represented to be. The evidence shows that a board meeting was never held on this matter and that Birkeland acted on his own in authorizing Marcus to sign as vice-president. This certificate was prepared and sworn to, at Birkeland's request, by an employee of Macoa who was not an assistant secretary of the corporation as was recited therein.

The question before us is whether Marcus' signing his own name to the instrument, but under a false power, causes the deed to be a forgery. In *Ramirez v. Bell,* 298 S.W. 924 (Tex.Civ.App.—Austin, July 1927, writ ref'd.) the court defined forgery as follows:

Forgery, at common law, was the making or altering of a written instrument

"purporting to be the act of another." 26 CJ 898.

Forgery was also similarly, but in a broader manner, defined in *Smith v. Dawson,* 234 S.W. 690 (Tex.Civ.App.—San Antonio 1921, n. w. h.).

Forgery is the making without authority of a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would, if true, have created, increased, diminished, discharged, or defeated any pecuniary obligation. The instrument must appear on its face to be, or must in fact be, one which, if true, would possess some legal validity, or be legally capable of effecting a fraud. *Scott v. State,* 40 Tex.Cr.R. 105, 48 S.W. 523.

Both of these cases stress that to be a forgery the signing must be by one who purports to act as another. "Another," as used in these definitions, includes all other persons, real or fictitious, except the person engaged in the forgery.

■ Therefore, one who signs his true name, and does not represent himself to be someone else of the same name, does not commit a forgery because his act does not purport to be that of another. *United Pacific Ins. Co. v. Idaho First Nat. Bank,* 378 F.2d 62 (9th Cir. 1967); *State Bank of Poplar Bluff v. Maryland Casualty Co.,* 289 F.2d 544 (8th Cir. 1961); *Gulf Oil Corp. v. Cantrell,* 387 S.W.2d 416 (Tex.Civ.App.—Beaumont 1965, dism.). This rule is clearly distinguishable from the holding in *Olsen v. Grelle,* 228 S.W. 927 (Tex.Comm'n App.1921, judmnt. adopted). In that case the court held that a deed was a forgery, even though signed by only one co-tenant with his true name, because he signed the conveyance under a forged power of attorney. In the instant case Marcus did not sign the conveyance under any such forged power but merely signed his own name as vice-president when he had no actual authority to do so.

■ The rule is also clear that one who signs his true name, purporting to act as the agent of another, has not committed a forgery. In 37 C.J.S. Forgery § 8, at p. 38, we find the following:

An agent may commit forgery by signing an instrument in disobedience of his instructions or in improper exercise of authority, but one who executes an instrument purporting on its face to be executed by him as an agent, when in fact he has no authority to execute such instrument, is not guilty of forgery.

■ The reason for this rule is plain. The fraud in such a case is not committed, as is required for a forgery, by inducing the belief that the instrument was executed by someone other than by the agent himself. Rather the fraud is committed, if at all, by inducing confidence in an agency which does not exist. While the alleged agent may be culpable for his fraud he has not committed a forgery. *Gilbert v. United States,* 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962); *Torrance Nat. Bank v. Aetna Casualty & Surety Co.,* 150 F.Supp. 638 (S.D.Cal.1957) aff'd 251 F.2d 666 (9th Cir. 1958). Marcus' signing of the deed conveying the Alpha-Welch Warehouse was not forgery. Marcus may be guilty of falsely representing the power under which he executed the instrument but he did not represent his act to be that of another.

In the alternative the plaintiffs also pleaded that Marcus executed the conveyance without authority and/or because the conveyance was made without any valuable consideration. The plaintiffs, however, pleaded both of these acts as frauds upon the corporation and not as fraud upon their own rights as creditors.

■ Deeds procured by fraud are voidable only, not void, at the election of the grantor. It is settled that such a deed is valid and represents prima facie evidence of title until there has been a successful suit to set it aside. *Meiners v. Texas Osage Coop-*

*erative Royalty Pool,* 309 S.W.2d 898 (Tex. Civ.App.—El Paso 1958, writ ref'd n. r. e.); *Whalen v. Richardson,* 353 S.W.2d 941 (Tex. Civ.App.—Amarillo 1962, n. w. h.). To the same effect is *Deaton v. Rush,* 113 Tex. 176, 252 S.W. 1025 (1923), wherein this court stated that:

> A deed obtained by fraud is not void but voidable only. As between the original parties Rush's title is prima facie good, and it could only be avoided by a suit and a decree annulling and canceling the deed.

 It is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury. In *American Nat. Ins. Co. v. Hicks,* 35 S.W.2d 128 (Com.App.1931, judgm. adopted), a right of action was defined as follows:

> The right to maintain an action depends upon the existence of what is termed a cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by defendant.

Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit. A suit to set aside a deed obtained by fraud can only be maintained by the defrauded party. *Smith v. Carter,* 45 S.W.2d 398 (Tex.Civ.App.—Texarkana 1932, writ dism'd); *Meiners v. Texas Osage Cooperative Royalty Pool, supra.* A party who was not defrauded by the conveyance has not suffered an invasion of a legal right and therefore does not have standing to bring suit based on that fraud.

The plaintiffs here are not the defrauded party but are creditors of the alleged defrauded party. Any cause of action which may have been created can only be asserted by Macoa, Inc. and does not accrue to the benefit of the plaintiffs. The plaintiffs lack standing to bring the present action, not because they incompletely pleaded the elements of a fraudulent conveyance but because they pleaded fraud, and under those pleadings they were not the defrauded party.

Accordingly, the judgments of the trial court and the court of civil appeals are affirmed.

GREENHILL, C. J., not sitting.